UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDER LYONS,

    Petitioner,

v.

DAVID BERGH,

    Respondent.

Case No. 15-13097
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

**OPINION AND ORDER
DENYING PETITIONER'S WRIT OF HABEAS CORPUS [1]**

After shooting and killing someone in a Craigslist sale gone bad, Alexander Lyons was convicted in state court of first-degree felony murder. He was sentenced to life in prison without the possibility of parole. He now petitions this Court for a writ of habeas corpus, claiming trial testimony from a detective violated his constitutional right to a fair trial, and his lawyer was ineffective for failing to object.

Neither claim warrants habeas relief. So for the reasons that follow, the Court denies Lyon's petition.

**I.**

**A.**

Back in the winter of 2011, Jonathan Clements wanted an Android phone. (R. 7, PageID.561.) So he placed a "wanted" ad on Craigslist. (*Id.*) Eventually, Alexander Lyons responded. (*Id.* at PageID.562.) Via text messages and phone calls, the pair agreed on a price, and a time and place for the exchange. (*Id.* at PageID.542.) Lyons arrived and the pair exchanged cash and phone. (*Id.* at PageID.546.) But before leaving, Lyons pulled a gun and demanded the phone

back. (*Id.* at PageID.538–39.) Pressing the gun into Clements side, Lyons pulled the trigger. (*Id.* at PageID.540.) Clements fell, Lyons took the phone, and ran off. (*Id.*) Lyons' accomplice, Lamar Clemons, drove the pair away. (*Id.* at PageID.563.)

Clements' aunt heard the gunshots and saw her nephew lying face down in the snow. (*Id.* at PageID.543.) She called 911, but Clements died shortly after paramedics arrived. When police arrived, officers found Clements' cellphone, and they learned from his aunt that he had been texting with someone about purchasing a new cellphone. (*Id.* at PageID.543–544.) Police searched the text log and found the phone number Clements texted about purchasing a cellphone. (*Id.* at PageID.544.) Not long after, police connected the number to Lyons. (*Id.*)

The next day, police arrested Lyons and, in time, conducted two videotaped interrogations. (*Id.* at PageID.544–546.) During his first interrogation, Lyons said he had nothing to do with any robbery. (*Id.* at PageID.545.) But after police collected other evidence and presented it to him, Lyons admitted, in a second interrogation, he decided to rob Clements when Lyons arrived in Hazel Park. (*Id.* at PageID.546.) But murder was never supposed to be a part of it. (*Id.*) Lyons said once he pulled the gun and demanded the phone back, Clements reached for the weapon. (*Id.*) Fearing for his safety, Lyons fired. (*Id.*) Then he fled with the Android cellphone and Clements' money. (*Id.* at PageID.540.)

Lyons was charged with first-degree felony murder and went to trial. To the jury, he argued the whole thing was a Craigslist sale gone horribly wrong. (*Id.* at PageID.548.) Lyons' lawyer told the jury Lyons never intended to rob anyone. (*Id.*) Lyons brought the gun to protect himself, and only when Lyons thought he saw Clements reaching for something in his pocket did Lyons draw and fire. (*Id.* at PageID.548–549.) But the jury also saw Lyons' videotaped statements, and heard testimony from the Hazel Park detective in charge of the investigation. (R. 7-8.)

In the end, the jury did not credit Lyons' theory. (R. 7, PageID.995.) And upon conviction, Lyons received a life sentence. (*Id.* at PageID.1009.)

**B.**

Lyons challenged his conviction in the state courts. At the court of appeals, Lyons' argued portions of the detective's trial testimony violated his due process rights and insufficient evidence existed to support the jury's finding that he intended to kill Clements. (R. 7, PageID.1042.) Additionally, Lyons filed a *pro se* brief, arguing that his trial counsel was ineffective for failing to object to portions of the detective's testimony and for failing to request an involuntary manslaughter instruction. (*Id.* at PageID.1140.) Yet on every issue, the court of appeals disagreed and affirmed Lyons' conviction. *People v. Lyons*, No. 306462, 2013 WL 6921521, at *3 (Mich. Ct. App. Dec. 26, 2013). Then the Michigan Supreme Court denied Lyons' application for leave to appeal. *People v. Lyons*, 847 N.W.2d 509 (2014).

Shortly thereafter, Lyons petitioned this Court for a writ of habeas corpus.[1] (R. 1.)

**II.**

State prisoners who believe they are in custody "in violation of the Constitution or laws or treaties of the United States" may petition a federal court for a writ of habeas corpus. 28 U.S.C. § 2254(a). On habeas corpus review, the Antiterrorism and Effective Death Penalty Act governs. According to AEDPA, a federal court must defer to a state court's decision "on the merits" unless the decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an

---

[1] Initially, Lyons' petition was a mixed one, raising both exhausted and unexhausted claims. So the Warden moved to dismiss (R. 6) but was unsuccessful (R. 9). In allowing Lyons to proceed, the Court offered him a few options, one of which was to voluntarily dismiss the unexhausted claims. (R. 9, PageID.1335.) Lyons chose that option. (R. 12, 15.)

3

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But "[w]hen a state court does not address a claim on the merits, . . . 'AEDPA deference' does not apply and [this Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

### III.

Lyons raises three independent grounds for habeas corpus relief. He says the Hazel Park detective's testimony violated his right to a fair trial, his trial counsel was ineffective for failing to object to the detective's testimony, and the state failed to present sufficient evidence to prove felony-murder's intent element beyond a reasonable doubt. The Court takes them in turn.

### A.

Lyons says portions of Detective Mark Roettger's testimony were so prejudicial that they deprived him of the fair trial that the Due Process Clause promises. (R. 1, PageID.9; R. 7, PageID.1050.) The Warden believes Lyons procedurally defaulted this claim when nobody objected to Roettger's testimony at trial. (R. 16, PageID.1379.) Lyons disagrees and urges the Court to reach the merits of his claim. (R. 19, PageID.1439–1447.)

### 1.

Despite Lyons' encouragement to skip to the merits, the Court begins with the Warden's procedural-default argument. *See Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018). In most circumstances, a federal court may not consider the federal claims in a habeas corpus petition if a state court denies relief because the petitioner "failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). To cement a procedural default, Lyons must have failed to comply with a procedural rule, the state courts must have enforced the rule against him, the rule must be an "adequate and independent" ground for barring habeas corpus review,

4

and Lyons cannot excuse the default. *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Here, the first and second elements are satisfied. Michigan has a procedural rule requiring Lyons to contemporaneously object to testimony he believes is inadmissible. *See* Mich. R. Evid. 103; *People v Frye*, No. 286179, 2009 Mich. App. LEXIS 2629, at *2 (Mich. Ct. App. Dec. 22, 2009) (citing *People v. Knox*, 674 N.W.2d 366, 369 (Mich. 2004)). Lyons concedes his counsel did not object to the portions of Roettger's trial testimony now at issue. (R. 1, PageID.10.) And when the court of appeals reviewed his claim for plain error, the state court enforced the rule against Lyons. *See Fleming v. Metrish*, 556 F.3d 520, 530 (6th Cir. 2009); *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir. 2008); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

The third element, here, is more complicated. To bar habeas corpus review, Michigan's contemporaneous-objection rule must be an "independent *and* adequate state ground." *Coleman v. Thompson,* 501 U.S. 722, 729–30 (1991) (emphasis added). To be sure, there are cases holding Michigan's contemporaneous-objection rule amounts to an "adequate and independent state ground" to close off habeas corpus review. *See, e.g.*, *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011) ("Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule.") But the cases analyze only the adequacy of the rule. Adequacy means the bar is "firmly established and regularly followed" by the state courts. *See, e.g.*, *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000); *see also Walker v. Martin*, 562 U.S. 307, 316 (2011); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005).

Along with adequate, a procedural bar must also be "independent." And independent has a few different meanings in the Sixth Circuit. It can mean "the state court actually relies on [the

5

procedural bar] to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)). Or, "[a] state procedural rule is an 'independent' ground for precluding federal habeas review if the state courts actually relied on the rule to bar the claim at issue." *Arias v. Lafler*, 511 F. App'x 440, 446 (6th Cir. 2013) (quoting *Biros*, 422 F.3d at 387). Or, "[w]hen a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state grounds only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996) (citing *Coleman v. Thompson*, 501 U.S. 722, 739 (1991)). All three get to the same place: did a "non-federal ground independently and adequately support[] the [state-court] judgment." *Coleman*, 501 U.S. at 739 (internal quotations omitted).

Here, despite Lyons' failure to object, the state court proceeded to analyze the admissibility of Roettger's testimony. *Lyons*, 2013 WL 6921521 at *2–3. It did not simply say that Michigan Rule of Evidence 103 applied and so it would decline to review the claim or would simply move onto Lyons' other claims. Instead, on plain-error review, the court of appeals held Roettger's testimony admissible pursuant to Michigan Rule of Evidence 401 and case law applying Michigan Rule of Evidence 701. *Lyons*, 2013 WL 6921521 at *2–3. And, said the Michigan Court of Appeals, even if the testimony was inadmissible, Roettger's testimony did not affect Lyons' substantial rights given the properly admitted evidence of Lyons' guilt (i.e., his videotaped statements). *Id.* at *5. So unlike situations where a state court's decision rests on a procedural rule to "bar the claim" or "preclude a merits review," *see, e.g.*, *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (finding procedurally defaulted a claim that the state courts denied because the petitioner failed to comply with Michigan Court Rule 6.508(D)(3)); *Scott v. Mitchell*, 209 F.3d

854, 864 (6th Cir. 2000) (finding a procedural default where a state court found a claim waived, and did not review for plain error); *James v. Strahota*, No. 15-717, 2016 U.S. Dist. LEXIS 170010, at *10 (E.D. Wisc. Dec. 8, 2016) (citing state court decision holding that because petitioner failed to object at trial the claim was forfeited and so would only be reviewed in the context of an ineffective-assistance-of-counsel claim), the court of appeals here reasoned through Lyons' objection to Roettger's testimony similar to the way the trial court might have done had Lyons' objected at the right time. So a procedural rule did not "prevent[] the state court[] from reaching the merits of [Lyon's] claim." *Willis*, 351 F.3d at 744.

Moreover, the court of appeals' plain-error analysis was at least "interwoven" with federal law. *Cf. Scott*, 209 F.3d at 867 (finding a state court decision was not interwoven with federal law where the state court offered no plain-error review and the decision relied purely on procedural grounds). Lyons' squarely presented his due-process claim to the Michigan Court of Appeals. (R. 7, PageID.1050.) In response, the state court reviewed for plain error, as established by *People v. Carines*, which applies to "unpreserved claims of *constitutional* error." 597 N.W.2d 130, 138 (Mich. 1999) (emphasis added). And the first prong of the *Carines* test requires the reviewing court to determine if error occurred at all. *See id.* ("1) error must have occurred"). So the court of appeals appreciated that Lyons raised a federal, constitutional challenge to Roettger's testimony, and the plain-error test required the court of appeals to at least review the testimony for error. In reviewing for error, to weigh the admissibility of Roettger's testimony the court of appeals relied on two Michigan Rules of Evidence that mirror their federal counterparts. *See People v. Hall*, 447 N.W.2d 580, 583 n.6 (Mich. 1989) ("Federal Rule of Evidence 401 is identical with MRE 401."); *People v. Fomby*, 831 N.W.2d 887, 889 (Mich. Ct. App. 2013) ("MRE 701 is virtually identical to FRE 701"). And, in an arguably analogous context, the Supreme Court has held that where state and

7

federal law line up, a state court's discussion of state law is "sufficient to cover a claim based on the related federal right," even if federal law is never mentioned. *See Johnson v. Williams*, 568 U.S. 289, 298–99 (2013); *Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017). So when it denied Lyons' federal, due-process challenge, the court of appeals presumably decided that the properly admitted evidence was not so *fundamentally unfair* as to deny Lyons' substantial rights *to a fair trial*. *See Johnson*, 568 U.S. at 293.

Given all of the above, it seems likely the state court's plain-error review was not "independent" of federal law such that Lyon's fair trial claim is procedurally barred. *See Coleman*, 522 U.S. at 730. Rather, it seems more likely the court of appeals looked past Lyons' failure to object and reached the merits of his claim—a scenario contemplated by the case law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("State procedural bars are not immortal. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available.").

But the Michigan Court of Appeals' waiver of a procedural bar is not a foregone conclusion. For one, it is not entirely clear that plain-error review sufficient to trigger AEDPA deference is also sufficient to overcome a procedural bar. *See Fleming*, 556 F.3d at 530 (reasoning that the existence of a procedural default is analytically distinct from the requirements for giving a state court's decision AEDPA deference). The plain-error rule established by *Carines* was designed to give full effect to the contemporaneous-objection requirement. *See* 597 N.W.2d at 139; *see also Wainwright v. Sykes*, 433 U.S. 72, 88–90 (1977) (explaining the substantial state interests furthered by a contemporaneous-objection rule). So it may be that when the Michigan Court of Appeals applies plain error pursuant to *Carines*, the state court's decision actually rests on Michigan Rule of Evidence 103, and the plain-error analysis is a mere alternative holding—a

8

situation which might permit a finding that the state court's judgment rested on an adequate and independent state procedural ground. *Coleman*, 501 U.S. at 733. Plus, plenty of circuit case law holds that plain-error review cannot rescue an otherwise defaulted claim. *See Stewart*, 867 F.3d at 638 (citing *Fleming*, 556 F.3d at 530) (collecting cases).

Ultimately, whether Lyons' defaulted his due-process claim is an unsettled issue. And although the procedural-default doctrine precludes consideration of a defaulted claim absent satisfaction of the cause-and-prejudice test, the doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). So the Court is not required to settle the question of a procedural default "before deciding against [Lyons'] on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). And having addressed the default argument raised by the Warden, *see Sheffield v. Burt*, 731 F. App'x at 441, in the end "judicial economy" points to giving "priority" to the merits of Lyons' due process claim given the complexity of the procedural-bar issue. *See Lambrix*, 520 U.S. at 525. So the Court turns to the merits.

**2.**

Recent Sixth Circuit case law holds that a state court's review for plain error can sometimes receive AEDPA deference. *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017) (plain-error review can be "on the merits" and so receive AEDPA deference) (citing *Fleming*, 556 F.3d at 531); *but see Frazier*, 770 F.3d at 496 n. 5. AEDPA deference applies when a state court, on plain-error review, "conducts *any* reasoned elaboration of an issue under federal law." *Id.* (emphasis added). And as already discussed above, the Michigan Court of Appeals offered at least some "reasoned elaboration" of federal law when it rejected Lyons' due process claim. So assuming that Lyons' fair-trial claim is not procedurally defaulted, the court of appeals' decision was at least "on the

merits" for the purposes of § 2254(d). Also pointing in that direction, "in ambiguous situations" *Harrington v. Richter* "obligates [the Court] to 'presume[] that the state court adjudicated the claim on the merits' . . . ." *Stewart*, 867 F.3d at 638 (quoting *Harrington v. Richter*, 562 U.S. 86, 99 (2011). So § 2254(d) applies.

**3.**

Recall that Lyons claims that portions of Roettger's testimony rendered the trial fundamentally unfair. Roettger led the investigation into Clements' death. (R. 7, PageID.778.) Lyons says Roettger impermissibly opined on the credibility of three other people: Lyons himself, another witness named Joseph Browder, and Latasha Pettas—a source of information during the investigation. So, says Lyons, Roettger's testimony violated his Fourteenth Amendment right to due process.

On plain-error review, the Michigan Court of Appeals rejected Lyons' due-process claim. As discussed, the state court said Roettger's credibility opinions were admissible under state law. In that court's view, all of the opinions stemmed from the state's "good-faith inquiries" into the police investigation that led to Lyons' charges, and as those inquiries were relevant so, too, was Roettger's testimony. *Lyons*, 2013 WL 6921521, at *2. And although Roettger did in fact opine on the credibility of witnesses (*see* R. 7, PageID.788–790, 793–795, 796, 797), Roettger offered permissible lay opinion based on what he observed first-hand when he interviewed all three individuals. *Lyons*, 2013 WL 6921521 at *2–3. Finally, even if admitting Roettger's opinions about the witnesses' credibility was error, the Michigan Court of Appeals said the testimony was cumulative of other evidence tending to show Lyons' and the others' credibility and so did not violate any of Lyons' "substantial" rights (a state-law standard). *Id.* at *3, 5.

Lyons says the Michigan Court of Appeals unreasonably applied Supreme Court case law establishing the baseline for fairness under the Due Process Clause. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Specifically, Lyons cites to *Estelle v. McGuire*, 502 U.S. 62, 75 (1991), *Dowling v. United States*, 493 U.S. 342 (1990), and *Lisenba v. California*, 314 U.S. 219, 236 (1941) for their applications of the *Darden* test to evidence admitted at trial.

As an initial matter, based on "evidentiary issues," Lyons seeks habeas corpus relief. *Bojaj*, 702 F. App'x at 320. To obtain relief, he must point to Supreme Court "'precedent establishing the *particular type* of evidence at issue as violating the defendant's due process rights." *Id.* (quoting *Ege v. Yukins*, 485 F.3d 364, 383 (6th Cir. 2007) (Boggs, J., dissenting)). *Estelle* and *Lisenba* are inapposite. Lyons' says Roettger's testimony violated his due-process rights. But *Estelle* did not apply a fundamental-fairness bar to testimony; it instead held that state-law challenges are not cognizable on habeas corpus review. *See* 502 U.S. at 67–68. And *Lisenba* applies a due-process-fairness analysis to the admissibility of coerced confessions. 314 U.S. at 235–37. So neither help Lyons and the Court cannot find any others that do.

Lyons is thus limited to arguing that Roettger's testimony was "so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990). Lyons cannot make that showing. True, Roettger commented on the credibility of another witness, Joseph Browder. But Browder had already told the jury he was not forthright with Roettger the first time they spoke. (R. 7, PageID.764, 766–769.) Also, Browder testified that the morning after Lyons shot Clements, Lyons told him that he had shot someone during a robbery. (R. 7, PageID.775.) As for Roettger's opinion on Lyons' credibility, Roettger did tell the jury Lyons lied. (R. 7, PageID. 797–800.) But the evidence admitted against Lyons included his two videotaped statements. (R. 7, PageID.796, 798.) In Lyons' first statement he claimed he had

11

nothing to do with any robbery (*id.* at PageID.794), and in the second, Lyons admitted to planning to rob Clements (*id.* at PageID.799). So viewed in context of all the other evidence, Lyons' cannot show that the Michigan Court of Appeals unreasonably concluded that Roettger's testimony was "cumulative." *Lyons*, 2013 WL 6921521 at *4. As such, he cannot show that the Michigan Court of Appeals unreasonably applied *Dowling*. And so Lyons has not cleared § 2254(d)'s bar to relief.

**B.**

Next, Lyons says his trial counsel performed ineffectively by failing to object to Roettger's testimony. The Michigan Court of Appeals decided this claim on the merits. *Lyons*, 2013 WL 6921521 at *5. The state court concluded that counsel "need not have objected to Roettger's proper lay opinion testimony." *Id.* Plus, given the other evidence of guilt, Lyons could not show Roettger's testimony affected the outcome of his trial.[2] *Id.* So AEDPA's deferential standard of review governs.

To succeed on his ineffective-assistance claim, Lyons must point to evidence of his trial counsel's deficient performance and then explain how that deficient performance prejudiced his legal defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). And when § 2254(d) applies, as it does here, Lyons must show that the state court unreasonably applied *Strickland*. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011).

But here, the state court reasonably concluded that Lyons could not establish prejudice under *Strickland*. Even if Lyons' counsel should have objected to Roettger's credibility opinions,

---

[2] In finding Roettger's testimony did not affect the outcome of Lyons' trial, the court of appeals cited *People v. Solmonson*, 683 N.W.2d 761, 765 (Mich. Ct. App. 2004). *Lyons*, 2013 WL 6921521 at *5. *Solmonson* applies the two-part *Strickland* analysis. *Solmonson*, 683 N.W.2d at 765. As Lyons presented an ineffective-assistance claim to the court of appeals, the Court presumes the court of appeals applied *Strickland's* prejudice prong in holding Lyons could not show Roettger's testimony affected the outcome of his trial.

the jurors nonetheless saw Lyons' statement and so saw him speak for himself. And they heard Browder admit the inconsistencies between his first and second statements to police. Then Browder told the jury Lyons told him about shooting someone in the course of a Hazel Park robbery. All that evidence made Roettger's third credibility opinion even less impactful. At bottom, Lyons cannot show a "reasonable probability" of a different outcome. *Strickland*, 466 U.S. at 694. So the state court reasonably applied *Strickland* and relief is not warranted.

## C.

Finally, Lyons says the prosecution failed to present sufficient evidence of malice to satisfy due process. Lyons was convicted of first-degree felony murder. And he says the evidence put before the jury did not show his intent to kill or harm Clements. Instead, the evidence establishes that he fired his gun because he feared for his safety.

The Michigan Court of Appeals adjudicated this claim on the merits. *Lyons*, 2013 WL 6921521, at *7–9. After a summary of the relevant testimony and exhibits, the court of appeals held "the evidence established that defendant Lyons approached [Clements] with a gun intending to rob him, placed the gun against [Clements'] body, and fired a shot while the gun still rested against [Clements'] abdomen." *Id.* at *8–9. So sufficient evidence supported the jury's decision that Lyons 'intentionally set in motion a force likely to cause [the victim's] death or great bodily harm.'" *Id.* at *9 (citing *Carines*, 597 N.W.2d at 136 (defining malice in Michigan.)). Given the adjudication "on the merits," § 2254(d) applies.

Lyons says the state court of appeals' decision unreasonably applied *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). So "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis added). But Lyons also

13

recognizes § 2254(d) applies, (R. 19, PageID.1454), and so understands that habeas corpus review is narrowly constrained to determining whether the court of appeals' opinion about the sufficiency of the evidence was "'outside the boundaries of permissible differences of opinion.'" *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011) (en banc) (citing *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

Lyons cannot overcome § 2254(d). Applying *Jackson* with "explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, the court of appeals reasonably concluded that sufficient evidence supported Lyons' conviction. Making all inferences and deciding conflicts in favor of the prosecution, *Jackson*, 443 U.S. at 326, a rational juror could have disbelieved Lyons' account of the shooting, and inferred malice simply because Lyons used a gun. *See Carines*, 597 N.W.2d at 136–37 (finding that malice may be inferred merely from the use of a "deadly weapon"). Bolstering its conclusion, the court of appeals reasonably added that Lyons intended to rob Clements from the start and brought a gun to help him do it, thereby intentionally setting in motion a deadly force. *See People v. Williams*, No. 232827, 2004 Mich. App. LEXIS 2459, at *13 (Mich. Ct. App. Sept. 23, 2004) (quoting *Carines*, 597 N.W.2d at 137) ("But from evidence that defendant participated in an armed robbery with a deadly weapon, the jury could infer 'defendant set in motion a force likely to cause death or great bodily harm.'") So Lyons cannot show the court of appeals' decision was so unreasonable that it was "beyond error." *Davis*, 658 F.3d at 535 (internal citations omitted).

## IV.

In summary, Lyons is not entitled to habeas corpus relief. On all three of his claims he is unable to overcome § 2254. Accordingly, the Court DENIES Lyons' petition for a writ of habeas corpus. Lastly, because the Court believes that no reasonable jurist would argue that petitioner

should be granted habeas corpus relief on his claims, the Court DENIES Lyons a certificate of appealability. See *Davis v. Rapelje*, 33 F. Supp. 3d 849, 865 (E.D. Mich. 2014).

Dated: September 13, 2018                                s/Laurie J. Michelson
                                                         U. S. DISTRICT JUDGE

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 13, 2018.
+

                                                         s/Teresa McGovern
                                                         Case Manager Generalist